UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

| | | |
|---|---|---|
| NORTHERN VALLEY<br>COMMUNICATIONS, LLC, | ) <br>) <br>) | CIV. 08-1003-KES |
| Plaintiff, | ) <br>) | |
| vs. | ) <br>) | ORDER GRANTING IN PART<br>AND DENYING IN PART |
| SPRINT COMMUNICATIONS<br>COMPANY LIMITED PARTNERSHIP, | ) <br>) <br>) | DEFENDANT'S MOTION TO<br>DISMISS THIRD-PARTY<br>DEFENDANT'S |
| Defendant and<br>Third-Party Plaintiff, | ) <br>) <br>) | COUNTERCLAIMS |
| vs. | ) <br>) | |
| GLOBAL CONFERENCE PARTNERS,<br>LLC, | ) <br>) <br>) | |
| Third-Party Defendant. | ) | |

Plaintiff, Northern Valley Communications, LLC (Northern Valley), brought suit against Sprint Communications Company Limited Partnership (Sprint), seeking to obtain payment for services it allegedly provided to Sprint. Sprint filed a third-party complaint against Global Conference Partners, LLC (GCP), alleging unjust enrichment and civil conspiracy. GCP, in turn, filed a five-count counterclaim against Sprint. Sprint moves to dismiss GCP's counterclaims. GCP opposes the motion.

**BACKGROUND**

Viewed in the light most favorable to GCP, the nonmoving party, and as is relevant to this order, the facts are as follows: Northern Valley is a South Dakota local exchange company that provides telecommunication services to its customers and originating and terminating access services to long-distance companies.[1] Sprint is a long-distance carrier that utilizes the originating and terminating services provided by Northern Valley.

GCP is a small business that provides teleconferencing services to its customers. GCP offers standard conference calling services for free and premium services for a fee. GCP maintains a long-term relationship with Northern Valley. Pursuant to this relationship, customers using GCP's free standard conference calling services are given a telephone number to dial. They use their own long-distance carriers to call the number, which connects

---

[1] By way of background, there are two types of telecommunications providers, local exchange carriers and interexchange carriers. Local exchange carriers provide the service and own the hardware that connects to individual customers in their local areas. By contrast, interexchange carriers, commonly known as long-distance carriers, own the hardware that connects different local carriers. When an individual makes a long-distance telephone call, the call is originated on wires and facilities owned by the local exchange carrier serving the individual making the call and the call is terminated over wires and facilities owned by the local exchange carrier serving the individual receiving the call. Long-distance carriers pay "originating" and "terminating" access charges to the local exchange carriers that serve individuals who initiate and receive long distance calls, respectively. The rates charged for access service are determined by the published tariff rate, which is filed with and reviewed by the Federal Communications Commission (FCC).

them to a conference call bridge located on the Northern Valley network. Conference call participants are connected to each other at and by the bridge. Northern Valley then charges the long-distance carrier that transmitted the call to the bridge the normal terminating access fee. Northern Valley pays GCP a marketing fee based on the amount of conference call traffic generated by its teleconferencing services.

At some point, Sprint became aware of GCP's relationship with Northern Valley, that GCP's teleconferencing services were competing with Sprint's conferencing services, and that some of Sprint's long-distance customers were using the long-distance services provided by Sprint to place calls to GCP's conference call bridge in order to use GCP's teleconferencing services. Then, GCP alleges, Sprint began engaging in acts of illegal self-help with the intent of harming both GCP and Northern Valley. Specifically, GCP alleges that Sprint refused to pay Northern Valley some or all of the access charges associated with calls to GCP's conference call bridge while not refusing to pay other local exchange carriers access charges associated with calls to GCP bridges located on other networks. As a result, GCP alleges, Sprint is indebted to Northern Valley, and Sprint knew that by failing to pay Northern Valley, GCP would, in turn, suffer damage from lost revenues.

Northern Valley filed suit against Sprint seeking to collect unpaid access charges. Sprint then filed counterclaims against Northern Valley and a third-

party complaint against GCP, alleging that they participated in an unlawful scheme to increase traffic and access charges billed to Sprint. GCP counterclaimed against Sprint, alleging that Sprint tortiously interfered with GCP's business relations with Northern Valley, engaged in unjust or unreasonable practices in violation of § 201(b) of the Communications Act, and engaged in unreasonable discrimination in violation of § 202(a) of the Communications Act. GCP seeks monetary, injunctive, and declaratory relief on its counterclaims. Sprint moves to dismiss all of GCP's counterclaims.

## STANDARD

In considering a motion to dismiss a counterclaim, whether on the ground of lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted, the court assumes all facts alleged in the counterclaim are true and construes the counterclaim liberally in the light most favorable to the claimant. Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183, 191, 104 S. Ct. 3012, 3017, 82 L. Ed. 2d 139 (1984). The court should dismiss only if "it appears beyond a doubt that the [claimant] can prove no set of facts which would entitle the [claimant] to relief." Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). "The issue is not whether a claimant will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a

4

recovery is very remote and unlikely but that is not the test." Scheuer, 416 U.S. at 236.

## DISCUSSION

### I.     Rule 12(b)(1)–Standing

Sprint claims that GCP lacks standing to bring all of its counterclaims because GCP has not alleged that it suffered injuries caused by Sprint. "Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.' That case-or-controversy requirement is satisfied only where a [claimant] has standing." Sprint Comm. Co. v. APCC Servs., Inc., 128 S. Ct. 2531, 2535, 171 L. Ed. 2d 424 (2008). "Standing includes both a constitutional and a prudential component." Jewell v. United States, 548 F.3d 1168, 1172 (8th Cir. 2008). The "irreducible constitutional minimum of standing" consists of three elements: "[f]irst, a party must have suffered an 'injury in fact,' an actual or imminent concrete and particularized invasion to a legally protected interest; second, the injury must be fairly traceable to the challenged action of the defendant; and third, the injury must be redressable by a favorable decision." Id. (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). "Even if a [claimant] meets the minimal constitutional requirements for standing, there are prudential limits on a court's exercise of jurisdiction." Id. One of these limits is the rule that a person ordinarily does not have standing to

assert the legal claims of third parties (the third-party standing rule). Sprint Comm., 128 S. Ct. at 2544. Another limit is the rule that the claimant must be intended to be included as a claimant under the statute conferring the cause of action. See Davis v. U.S. Bancorp, 383 F.3d 761, 767 (8th Cir. 2004).

The party invoking federal jurisdiction bears the burden of establishing that it has standing. Lujan, 504 U.S. at 561. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." Stalley v. Catholic Health Initiatives, 509 F.3d 517, 521 (8th Cir. 2007). The court must examine the allegations in the counterclaim "to ascertain whether the particular plaintiff is entitled to an adjudication of the particular claims asserted." Pucket v. Hot Springs Sch. Dist. No. 23-2, 526 F.3d 1151, 1157 (8th Cir. 2008).

### A. Article III Standing

Construing the counterclaims in the light most favorable to GCP, the court finds that GCP has alleged sufficient facts to satisfy the constitutional requirements for standing on all of its counterclaims. First, GCP has alleged that it sustained an injury in fact. At the motion to dismiss stage, GCP need only give Sprint "fair notice of what the . . . claim is and the grounds upon which it rests." See Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007) (quoting Fed. R. Civ. P. 8(a)(2); Bell Atlantic Corp. v.

6

Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007)) (discussing motion to dismiss under Rule 12(b)(6)).

GCP's allegations give Sprint notice that GCP claims that Sprint engaged in acts of illegal self-help that caused harm to GCP. GCP alleges that Sprint engaged in these acts because it was "opposed to the relationship between Northern Valley and GCP, as well as opposed to the competition with its services [posed by GCP]." Third-Party Defendant Global Conference Partners' Answer to Sprint's Third-Party Complaint, Counterclaims and Jury Demand (GCP's Counterclaims), Docket 27 ¶ 35. GCP further alleges that Sprint acted with "the intent of harming both GCP and Northern Valley." GCP's Counterclaims ¶ 36. For example, GCP alleges that Sprint refused to pay Northern Valley for the terminating access charges associated with calls made to the GCP conference call bridge located on Northern Valley's network. GCP's Counterclaims ¶¶ 37, 39, 41. And, GCP alleges, "[b]y failing to pay Northern Valley, Sprint knew that GCP would, in turn, suffer damage from the lost revenues." GCP's Counterclaims ¶ 47. GCP further alleges that "Sprint took calculated steps to unjustly, intentionally and maliciously interfere with the business relationship between GCP and Northern Valley, with the intent of destroying the parties' business relationship by, including but not limited to, putting both GCP and Northern Valley out of business by refusing to pay Northern Valley for its billed services." GCP's Counterclaims ¶ 52.

The court finds that the allegations in GCP's counterclaims are sufficient to give Sprint fair notice of what the claim is and the grounds upon which it rests. GCP's claim against Sprint is that Sprint damaged its business relationship with Northern Valley by refusing to pay the terminating access fees associated with calls to GCP's conference call bridge, which caused GCP to suffer lost revenues. Sprint argues that GCP lacks standing because it did not specifically plead that Northern Valley actually failed to pay GCP the marketing fees that GCP was owed. But at the pleading stage, general factual allegations of injury are sufficient and are presumed to embrace the specific facts necessary to support the claim. <u>Stalley</u>, 509 F.3d at 521. Thus, GCP is entitled to the inference that Sprint's refusal to pay Northern Valley the terminating access charges associated with calls to GCP's conference call bridge caused loss of revenue to GCP as well as to Northern Valley. The reasonableness of this inference is shown by the relief GCP seeks on its Communications Act counterclaims. GCP alleges that it is entitled to "damages in the amount of money that has been withheld from it as a result of Sprint's failure to pay Northern Valley." GCP's Counterclaims ¶¶ 59, 66. In these paragraphs, GCP clearly alleges that it has incurred monetary damages as a result of Sprint's conduct. This injury is actual, concrete, and particularized.[2]

---

[2] Sprint relies on an unpublished opinion from the United States District Court for the Southern District of California to argue that GCP is improperly asserting Northern Valley's legal interests. While Sprint uses this case to argue

8

Second, GCP has alleged that Sprint's actions caused its injury. Sprint argues that GCP has failed to allege that Sprint's refusal to pay Northern Valley precluded Northern Valley from paying the marketing fees owed to GCP, but at the pleading stage GCP is entitled to the reasonable inference that Northern Valley was unable to pay GCP because Sprint did not pay Northern Valley.

Finally, GCP's alleged injury would be redressed by a decision in its favor. GCP seeks damages in the amount of money that has been withheld from it as a result of Sprint's failure to pay Northern Valley as well as injunctive and declaratory relief. GCP's Counterclaims ¶¶ 59, 66, 73, 84. The monetary relief would clearly remedy the lost revenue that GCP suffered, and it

---

that GCP lacks prudential standing due to the third-party standing rule, Utility Consumers' Action Network v. Sprint Solutions, Inc. (UCAN), No. C07-CV-2231-W (RJB), 2008 WL 1787125 (S.D. Cal. Apr. 15, 2008), actually held that the claimant, a non-profit public interest advocacy organization, lacked Article III standing because it failed to allege an injury in fact. There, the allegedly unlawful charges were made on bills between the defendant telephone company and its customers, and the claimant's only damages were resources it chose to expend to investigate the telephone company's conduct on behalf of its members. UCAN is distinguishable from the present case. There, the telephone company's actions only harmed its customers, not the advocacy organization directly. Here, GCP alleges that Sprint's conduct affected it directly; GCP allegedly sustained lost revenue as a result of Sprint's conduct. Thus, UCAN does not persuade the court that GCP has failed to allege an injury in fact.

Further, the court rejects Sprint's reading of UCAN as requiring a claimant under § 207 of the Communications Act to allege a direct relationship with the defendant. Section 207 allows any person claiming to be damaged by a common carrier to bring suit for the recovery of damages. 47 U.S.C. § 207.

is a fair inference that declaratory and injunctive relief regarding Sprint's obligation to pay Northern Valley would redress GCP's lost revenue as well. Because all three elements are satisfied, GCP has met the minimal constitutional requirements for standing. See Sprint Comm., 128 S. Ct. at 2544.

### B. Prudential Standing

The standing inquiry is not over, however, as GCP still must satisfy the prudential limits on the court's subject matter jurisdiction. See Sprint Comm., 128 S. Ct. at 2544. Sprint argues that GCP lacks standing on its counterclaims because it seeks to assert the legal rights of Northern Valley, in contravention of the third-party standing rule. The court finds that the prudential standing doctrine that requires a claimant to be within the "zone of interests to be protected or regulated by the statute . . . in question," see Davis, 383 F.3d at 767, is also relevant and will consider it as well.

#### 1. Tortious Interference

GCP has standing to pursue its claim for tortious interference with business relations under the prudential standing rules outlined above. A person has a claim for tortious interference if they show: (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferor of the relationship or expectancy; (3) an intentional unjustified act of interference on the part of the interferor; (4) proof that the interference cause the harm

10

sustained; and (5) damages. St. Onge Livestock Co. v. Curtis, 650 N.W.2d 537, 541 (S.D. 2002). As an entity claiming that Sprint interfered with its relationship with Northern Valley, GCP is intended to be a claimant under this tort and is asserting its own claim.

## 2. Damages for Violations of Communications Act

GCP also satisfies the prudential standing rules with respect to its claim for damages under the Communications Act. In Counts II and III of its counterclaims, GCP alleges that Sprint violated §§ 201(b) and 202(a) of the Communications Act and seeks damages in the amount of money that has been withheld from it as a result of Sprint's failure to pay Northern Valley. GCP's Counterclaims ¶¶ 59, 66. GCP plainly falls within the zone of interests intended to be protected by the relevant statute on these claims.

The relevant statute is the Communications Act, and GCP's claims for damages are brought under §§ 206 and 207. Section 206 sets out the liability of a common carrier for violation of the Act to the "person or persons injured thereby for the full amount of damages sustained in the consequence of any such violation." 47 U.S.C. § 206. Section 207 confers a cause of action upon the person or persons injured. "Section 207 says that '[a]ny person claiming to be damaged by any common carrier . . . may bring suit' against the carrier 'in any district court of the United States' for 'recovery of the *damages* for which such common carrier *may be liable* under the provisions of this chapter.' "

11

Global Crossing Telecomm., Inc. v. Metrophones Telecomm., Inc., 550 U.S. 45, 52, 127 S. Ct. 1513, 167 L. Ed. 2d (2007) (quoting 47 U.S.C. § 207) (emphasis in original). It is well established that these sections confer a private right to bring an action to recover damages for injuries sustained by a violation of §§ 201(b) and 202(a). Id. at 53 (§ 201(b)); Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp., 305 F.3d 89, 98 (2d Cir. 2002), rev'd on other grounds sub nom. Sprint Comm., Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398, 124 S. Ct. 872, 157 L. Ed. 2d 823 (2004) (§ 202(a)).

GCP is clearly intended to be included as a claimant under the Communications Act with respect to its claim for damages. GCP claims that it was injured by Sprint's alleged violations of the Act, and Sprint does not argue that GCP failed to allege that Sprint's conduct violated § 201(b)'s prohibition on unjust or unreasonable practices or § 202(a)'s prohibition on unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services.[3] Sprint does argue that GCP did not sustain any injuries,

---

[3] In its reply brief, Sprint argues in a footnote that the relationship between Sprint and Northern Valley is not controlled by the Communications Act because Sprint does not provide telecommunications services to Northern Valley and therefore is not a common carrier subject to the Communications Act. Sprint's Reply Brief in Support of Motion to Dismiss Counterclaims of GCP, Docket 34 at 4 n.1. Sprint's argument raises complicated issues regarding the applicability of § 207 and the relationship between the terms "common carrier," "local exchange carrier," and "telecommunications carrier." See Western Radio Servs. Co. v. Qwest Corp., 530 F.3d 1186, 1204-05 (9th Cir. 2008). The parties have not addressed the issue raised in Sprint's footnote, and Sprint's argument in favor of dismissal of GCP's counterclaims rests

12

but as discussed in Section I.A, the court finds that GCP has sufficiently alleged that it suffered lost revenue as a result of Sprint's conduct.  GCP's claim for damages for these violations falls within the purpose of §§ 206 and 207.  As the Supreme Court explained, "[t]he history of [§§ 206 and 207]—including that of their predecessors, §§ 8 and 9 of the Interstate Commerce Act—simply reinforces the language, making clear that the purpose of § 207 is to allow persons injured by § 201(b) violations to bring federal-court *damages* actions." Global Crossing, 550 U.S. at 53 (emphasis added).  As an entity that contends that it was injured by violations of §§ 201(b) and 202(a), GCP plainly meets the requirements for having a cause of action under the Communications Act.  See Trinko, 305 F.3d at 99 (finding that customers that alleged they were injured by a violation of the Communications Act because they received poor local phone service plainly met the requirements for having an action under §§ 206 and 207).

That GCP meets the requirements for having a cause of action under the Communications Act undermines Sprint's argument that GCP's claims rest on the legal rights of Northern Valley.  Because GCP has a cause of action, it "is asserting its own rights." Id.  GCP has standing to assert its claims for damages in Counts II and III of its counterclaims.

---

entirely on the issue of whether GCP has alleged harm and causation.  As a result, the court will not address the issue of whether the Communications Act applies for the purposes of GCP's counterclaims at this time.

### 3. Injunctive Relief

In Count IV of its counterclaims, GCP also seeks injunctive relief asking the court to enjoin Sprint from refusing to pay for Northern Valley's billed services. To the extent this claim is derivative of the Communications Act claims, the court finds that GCP has not met the prudential requirement under §§ 206 and 207 because these sections do not provide for a private right to seek injunctive relief. In Conboy v. AT & T Corp., 241 F.3d 242, 256 (2d Cir. 2001), the United States Court of Appeals for the Second Circuit held that a private party lacks standing under §§ 206 and 207 to request injunctive relief for violation of the Communications Act.[4] The Second Circuit acknowledged that federal courts generally have inherent power to grant injunctive relief, but stated that this power can be limited by statute. Id. at 254. Considering the Communications Act as a whole, the Second Circuit concluded that Congress has "spoken clearly" of its "intent to interfere with the historic equitable powers of the courts." Id. (internal quotation and citation omitted). "Congress restricts

---

[4] In Conboy, the Second Circuit considered whether a private party had standing to pursue injunctive relief for violations of § 222(c) of the Communications Act. 241 F.3d at 256. Admittedly, § 222(c) concerns different conduct than §§ 201(b) and 202(a), but the Second Circuit's reasoning regarding the availability of injunctive relief still applies. As the Second Circuit explained in another case, "the plaintiff's right to sue does not stem from § 202(a). It originates from §§ 206 and 207, which make parties who violate the Communications Act liable to the parties they injure through such violations." Trinko, 305 F.3d at 99. Sections 206 and 207 confer the cause of action for the violations at issue in Conboy as well as the violations alleged by GCP. As a result, the Second Circuit's reasoning regarding the remedies available under these sections applies with equal weight in this case.

a court's equitable power when a statute limits that power 'in so many words, or by a necessary and inescapable inference.' " Id. (quoting Porter v. Warner Holding Co., 328 U.S. 395, 398, 66 S. Ct. 1086, 90 L. Ed. 1332 (1946)).

The Second Circuit found that the Communications Act "creates such an inference with respect to private parties seeking injunctive relief for violation of the Act." Id. Indeed, Congress established a comprehensive scheme of remedies for violations of the common carrier provisions of the Act, a scheme that does not include a general right to seek private injunctive relief. See id. Sections 401(a) and 401(b) of the Telecommunications Act (enacted in 1996 as an amendment to the Communications Act) permit federal courts to grant injunctive relief, but only upon application of the Attorney General of the United States at the request of the FCC, or to enforce certain orders of the FCC.[5] 47 U.S.C. § 401(a)-(b). Also part of this remedial scheme are §§ 206 and 207, which permit a private party to seek damages only. See 47 U.S.C. §§ 206, 207. The fact that the Communications Act is not silent as to the remedies available for violation of its provisions suggests that Congress did not intend the full range of remedies, specifically equitable relief, to be available. Cf. Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 68, 112 S. Ct. 1028, 117

---

[5] Sections 401(a) and (b) of the Telecommunications Act do not provide a cause of action for GCP to seek injunctive relief under the facts of this case. There has been no application of the Attorney General at the request of the FCC to this court, and GCP does not seek to enforce an FCC order. Thus, GCP is not intended to be included as a claimant under these provisions.

15

L. Ed. 2d 208 (1992) ("[A]ll appropriate relief is available in an action brought to vindicate a federal right when Congress has given *no indication* of its purpose with respect to remedies.").

Additionally, Congress provided for private injunctive relief for violations of other provisions of the Act. Conboy, 241 F.3d at 255 (citing 47 U.S.C. § 406 (providing for private injunctive relief where party is prevented from receiving service by wire or radio); 47 U.S.C. § 274(e)(2) (providing for private injunctive relief where a Bell operating company violates the electronic publishing restrictions of § 274)). As the Second Circuit suggested, these provisions imply that Congress knew how to confer a right of action for private injunctive relief, and if it had intended to do so for violations of the common carrier provisions, it would have. Cf. Bryan v. Itasca County, Minn., 426 U.S. 373, 389-90, 96 S. Ct. 2102, 48 L. Ed. 2d 710 (1976) (reasoning that other acts passed by the same Congress showed that Congress knew how to, and would, directly express its intent to confer general regulatory powers to the states).

The existence of a comprehensive remedial scheme for violations of the common carrier provisions of the Communications Act, the absence of any provision mentioning a general right to seek private injunctive relief for violation of these provisions, and the express inclusion of private injunctive relief for violations of unrelated sections of the Act leads "necessar[ily]" and "inescapabl[y]" to the conclusion that "Congress did not intend to permit

private parties to seek [private injunctive] relief for a violation of [the relevant sections]." Conboy, 241 F.3d at 255.  The court finds the reasoning of the Second Circuit persuasive and adopts it here.  Thus, GCP does not have standing to request injunctive relief under the Communications Act for violations of §§ 201(b) and 202(a) because it was not intended to be included as a claimant under §§ 206 and 207.

Even if the Communications Act gave GCP a cause of action for injunctive relief, GCP would lack standing to pursue this relief under the third-party standing rule.  GCP asks the court to enjoin Sprint from refusing to pay for Northern Valley's billed services.  GCP's Counterclaims ¶ 66.  The relief GCP seeks concerns Northern Valley's right to collect payment from Sprint. Although this injunction would remedy GCP's alleged damages, which are allegedly caused by Sprint's failure to pay Northern Valley, GCP does not have standing to seek an injunction to enforce Northern Valley's rights in order to remedy GCP's own injuries.  The third-party standing rule "normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." Warth v. Seldin, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975).  None of the narrow exceptions to this rule

apply.[6] As a result, GCP does not have standing to bring its claim for injunctive relief.

### 4. Declaratory Judgment

Finally, in Count V, GCP seeks declaratory relief, requesting the court to

> enter a declaration against Sprint declaring that Sprint is required to pay the currently unpaid invoices submitted by Northern Valley for Switched Access Service, that Sprint is required to pay Northern Valley tariffed terminating switched access charges for the termination of long-distance calls to GCP's conference bridge equipment, that Sprint's conduct of engaging in self help is illegal and impermissible, that Northern Valley's tariffed rates for Switched Access Service are lawful and any claims asserted with respect to said tariffs are barred by the Filed Rate Doctrine.

GCP's Counterclaims ¶ 84.

GCP's request for declaratory relief arises under the Declaratory Judgment Act, which allows the court to declare the rights and other legal relations of any interested party seeking such declaration in any case of actual controversy within the court's jurisdiction. 28 U.S.C. § 2201. As an interested party, GCP is clearly within the "zone of interests" to be protected by the Act.

---

[6] The third-party standing rule does not apply where Congress expressly or by clear implication grants a right of action to third parties. Warth, 422 U.S. at 509-10. The Supreme Court has also "allowed standing to litigate the rights of third parties when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights." Id. Neither of these exceptions applies. GCP has not pointed to anything in the Communications Act that allows a private third party to sue to enforce the rights of another. Furthermore, dismissing GCP's claims for injunctive relief for lack of standing would not cause a violation of Northern Valley's rights. Indeed, Northern Valley is a party to this action and has asserted its own claims against Sprint. See Complaint, Docket 1.

Each declaration GCP seeks, however, concerns the legal rights and relationships as between Sprint and Northern Valley, not the legal rights and relationships as between Sprint and GCP.  As with its claim for injunctive relief, GCP does not have standing to seek a declaration of Northern Valley's rights in order to remedy GCP's own injuries.  See Warth, 422 U.S. at 499. Again, none of the exceptions to this rule apply.  As a result, GCP does not have standing to bring its claim for declaratory relief.

## II. Rule 12(b)(6)–Failure to State a Claim

Sprint also argues that GCP has failed to state a claim upon which relief can be granted with respect to its tortious interference with business relations and Communications Act claims. Sprint's only argument on both claims is that GCP failed to allege that it suffered damages caused by Sprint's conduct.  As explained in Section I.A, Sprint has sufficiently alleged that it suffered damages in the amount of revenue lost due to Sprint's failure to pay Northern Valley the terminating access charges associated with calls to GCP's conference call bridge.  This allegation is sufficient to establish the causation and damages elements of tortious interference[7] as well as to give GCP a cause of action to

---

[7] As explained in Section II.B.1, to prove a claim for tortious interference, GCP must show: (1) the existence of a valid business relationship or expectancy between GCP and Northern Valley; (2) knowledge by Sprint of the relationship or expectancy; (3) an intentional unjustified act of interference on the part of Sprint; (4) proof that the interference caused the harm sustained; and (5) damages.  See St. Onge Livestock Co., 650 N.W.2d at 541.  Sprint admits that GCP has alleged the first three elements, and the court finds that GCP has alleged causation and damages.

seek damages for Sprint's alleged violations of §§ 201(b) and 202(a) of the Communications Act.[8]  Thus, Sprint's motion to dismiss for failure to state a claim is denied.

Based on the foregoing, the court denies Sprint's motion to dismiss GCP's claims of tortious interference (Count I), violation of § 201(b) of the Communications Act (Count II), and violation of § 202(a) of the Communications Act (Count III).  GCP's requests for injunctive relief (Count IV) and declaratory relief (Count V) are dismissed for lack of standing.  It is hereby

ORDERED that Sprint's motion to dismiss GCP's counterclaims (Docket 28) is granted in part and denied in part.

Dated March 19, 2009.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

---

[8] As discussed in Section II.B.2, § 207 allows any person damaged by a violation of the Communications Act to bring an action for damages.  GCP has alleged that it was damaged by Sprint's conduct, and Sprint does not dispute that GCP's allegations state violations of §§ 201(b) and 202(a).